

**Via ECF**                                                                 October 29, 2025

The Honorable Valerie Figueredo
United States Magistrate Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

      Re: *Jones, et al. v. Fanatics Inc., et al.*, Consolidated Case No. 1:25-cv-05776-LTS-VF (S.D.N.Y.) – Request for Discovery Conference

Dear Judge Figueredo:

    Indirect Purchaser Plaintiffs ("IPPs") in the above-captioned matter ("*Jones*") respectfully request a discovery conference concerning IPPs' request for limited document discovery from the Fanatics Defendants.[1] Specifically, IPPs seek an order directing Fanatics to reproduce to IPPs the same documents Fanatics produced, or will produce, to Panini America, Inc. in *Panini America, Inc. v. Fanatics, Inc., et al.*, No. 23-cv-9714-LTS-VF ("*Panini*").

    Pursuant to Federal Rule of Civil Procedure 26(d)(2), IPPs sent Fanatics Document Requests seeking documents that have been or will be produced in *Panini*. *See* Ex. 1 and 1A (IPPs' Oct. 8, 2025 discovery letter and attached requests for production). The requested documents are relevant and their production will impose minimal burden on Fanatics. Fanatics cannot show good cause for a stay of this limited discovery, and the production will materially advance *Jones* while motions to dismissed are being decided.[2]

    ***IPPs' Requested Documents Are Relevant and Discoverable***. IPPs' Request No. 1 seeks (a) Fanatics' agreements with the MLB, NFL, NBA and their Players Associations related to MLB, NFL, and NBA player trading cards; (b) Fanatics' agreements with OneTeam related to MLB and NFL trading cards; (c) Fanatics' agreements related to GC Packaging, LLC ("GCP"); and (d)

---

[1] IPPs are Phillip Jones, Saad Amer, Sean Auld, Kylene Comeau, Daniel Enriquez, Chip Furr, Glen Gay, Mitchell Goldberger, Staven Hodge, Bruce Honnold, Joseph Kelly, Alexandros Kolazas, Timothy McCann Jr., Ryan Meuse, Aaron Murphy, Edgar Nava, John Scholl, and Richard Craig Smith. The "Fanatics Defendants" are Fanatics, Inc., Fanatics, LLC, Fanatics Collectibles Intermediate Holdco, Inc., Fanatics SPV, LLC, and Fanatics Holdings, Inc.

[2] The undersigned certify that IPPs raised this request by letter dated October 8, 2025, by further written communications dated October 10 and 14, and by a Zoom meet-and-confer call on October 16, 2025 at 2:00 pm (EDT) for approximately 15 minutes. Chris Micheletti, Alex Barnett, Qianwei Fu, and Navy Thompson participated for IPPs. Lawrence Buterman and Alicia Jovais participated for Fanatics. Fanatics' position was that any discovery was premature given that Defendants' anticipated motions to dismiss had not yet been filed or adjudicated. The parties agreed they were at impasse. On October 23, 2025, IPPs advised Fanatics they would be requesting a discovery conference with the Court.

Hon. Valerie Figueredo
October 29, 2025

Fanatics' agreements with hobby stores, distributors, big-box retailers, and case breakers related to the selling of MLB, NFL, and NBA player trading cards. *See* Ex. 1A at 7-8. These requests mirror Panini's First Set of Requests for Production (*see Panini*, ECF No. 162-1), and are clearly relevant to IPPs' claims.[3] Indeed, the Court's order upholding Panini's claims relied on allegations related to these documents. *See Panini*, ECF No. 164 at 3-5, 11-12, 20-21.

IPPs' Request No. 2 seeks the same categories of materials Fanatics produced, or will produce, in response to Panini's Second Set of Requests for Production dated April 29, 2025. *See* Ex. 1A at 8. These documents concern, among other topics, Fanatics' (a) acquisition of the MLB license through its purchase of Topps, (b) solicitation of Panini employees, and (c) granting equity and ownership rights in Fanatics trading card venture to licensors. The Court found these documents relevant to Panini's monopolization claims (*see Panini*, ECF No. 197 at 1-3) and they are equally relevant here. *See, e.g.*, CAC ¶¶ 131-134 (addressing Fanatics' acquisition of Topps and the MLB license); *id*. ¶¶ 143-147 (alleging Fanatics raided Panini for employees); *id*. ¶¶ 6, 123, 126 (alleging Fanatics induced the Leagues and Players Associations to deal with them by giving them equity ownership interest in Fanatics).

***Early, Limited Discovery Is Appropriate and Efficient***. The Court has discretion to stay discovery upon a showing of good cause. *Mirra v. Jordan*, No. 15-CV-4100 (AT) (KNF), 2016 WL 889559, at *2 (S.D.N.Y. Mar. 1, 2016). Courts determining whether to grant a stay of discovery during the pendency of a dispositive motion consider "(1) whether the movant has made a strong showing that the non-movant's claim is meritless; (2) the breadth of discovery and the burden of responding to it; and (3) the risk of unfair prejudice to the party opposing the stay." *Configure Partners LLC v. RACI Holdings LLC*, No. 22-CV-8631 (RA) (JW), 2023 WL 2811135, at *1 (S.D.N.Y. Apr. 6, 2023). IPPs are mindful of the Court's recent discovery stay order in *Scaturo, et al. v. Fanatics, et al*., No. 25-cv-02202-LTS-VF, ECF No. 172, but respectfully submit that Fanatics cannot show good cause for a stay of the limited discovery IPPs seek here.

***First,*** IPPs' requests are cabined to documents already produced (or to be produced) in *Panini*. The resulting burden on Fanatics is therefore minimal. *See, e.g., ADL, LLC v. Tirakian*, No. CV 06-5076 (SJF) (MDG), 2007 WL 1988751, at *3 (E.D.N.Y. July 5, 2007) (no undue burden where defendant already produced the discovery in a prior related action). Thus, the Court's concern about "costly and expensive" discovery in *Scaturo* (ECF No. 172 at 2) is not present here.

***Second,*** a stay of discovery is not warranted based on the strength of any contemplated motion to dismiss to be filed by Fanatics. This criterion "is not, and should not, be a way to obtain an initial ruling on the viability of Plaintiff's case" and looks at "whether the complaint is facially without merit or whether the plaintiff has been unable to cite relevant authority in response to a defendant's challenge." *Bennett v. Cuomo*, No. 22-CV-7846 (VSB), 2023 WL 2021560, at *2 (S.D.N.Y. Feb. 15, 2023). Courts also consider whether a motion will "dispose of the whole

---

[3] *See, e.g.*, Corrected Consolidated Class Action Complaint filed in *Jones* ("CAC"), ECF No. 141, ¶¶ 113-123 (describing the licensing agreements at issue); *id*. ¶¶ 124-126 (describing OneTeam's role in the launch of Fanatics Collectibles); *id*. ¶¶ 135-142 (describing Fanatics' acquisition of control over GCP); *id*. ¶¶ 154-164 (describing Fanatics' coercion of retailer and hobby shops). The Court in *Panini* found several of these document categories relevant and ordered their production. *See, e.g.*, *Panini*, ECF Nos. 136 (Dec. 12, 2024 Hrg. Tr.) at 3:20-4:14 and 5:13-6:1 (requiring Fanatics to produce six licensing agreements), 174 (May 1, 2025 order requiring production of agreements with GCP), 197 at 2 (Aug. 12, 2025 order noting Fanatics' agreement to produce OneTeam documents).

2

Hon. Valerie Figueredo
October 29, 2025

action." *Id*. at *3. Here, as explained below, Fanatics cannot show that IPPs' CAC is facially without merit or that any contemplated motion to dismiss will dispose of the entire case.

<u>IPPs' Claims Are Not Subject to Arbitration</u>. IPPs assert claims exclusively as indirect purchasers; their claims are not based on purchases from Fanatics or any other Defendant, but rather on purchases from third-party retailers such as Walmart and Target. *See* CAC ¶¶ 26-43, 88, 195, 204. By contrast, Fanatics' motion to compel arbitration in *Scaturo* rests on *direct purchases* from Fanatics' website. *See Scaturo*, ECF No. 141 at 20 ("[Direct Purchaser] Plaintiffs' antitrust claims arise out of and are connected with Fanatics' websites because *Plaintiffs purport to have directly purchased trading card products from Fanatics, purport to represent a class of all direct purchasers from Fanatics (including its websites), and seek damages for purchases on Fanatics' website*.") (emphasis added). Such facts are not present here. IPPs do not seek damages for purchases from Fanatics, and no arbitration agreements govern their claims.

<u>IPPs Satisfy Both Article III and Antitrust Standing.</u> IPPs allege concrete, particularized injuries in the form of supra-competitive prices paid for Pro Sports Trading Cards, reduced output, diminished quality, and/or reduced consumer choice across a market defined to include MLB, NFL, and NBA cards. CAC ¶¶ 1, 2, 19, 76, 182-197. While IPPs' CAC details Fanatics' conduct that has impacted prices of Pro Sports Trading Cards (*see, e.g., id.* ¶¶ 16, 160-162, 164, 179, 184), the alleged exclusionary conduct also includes (a) Fanatics' acquisition of GCP and related anticompetitive conduct that has reduced output in the market overall (*id*. ¶¶ 135-142, 165, 233); (b) Fanatics' signing exclusive autograph deals with star rookie players that reduced consumer choices for Pro Sports Trading Cards, including NBA and NFL cards (*id*. ¶¶ 10, 149-150, 153); and (c) Fanatics' coercion of retailers resulting in limited consumer options at retail for Pro Sports Trading Cards (*id*. ¶¶ 14-15, 155, 163). Thus, the alleged conduct impacted market conditions and consumer choice, regardless of the formal start date of Fanatics' NBA and NFL exclusive licenses. The law recognizes reduction of consumer choice and quality as cognizable antitrust injuries when tied to anticompetitive practices. *See Laumann v. Nat'l Hockey League*, 105 F. Supp. 3d 384, 397 (S.D.N.Y. 2015) ("Antitrust injuries" include both "higher prices" and "anticompetitive conduct [that] limits consumer options"); *Ross v. Bank of Am.*, 524 F.3d 217, 226 (2d Cir. 2008) (reductions in "consumer choice" and the "quality of [] services offered" are antitrust injuries). Those injuries are traceable to Fanatics' exclusionary conduct and are redressable through damages and injunctive relief under the antitrust laws. *See* CAC ¶¶ 182-197 (addressing "Antitrust Injury").

**Third,** with respect to prejudice to IPPs, the Court has recognized that discovery "[d]elay itself prejudices the plaintiff," especially when—as here—the sought-after documents are at the "crux" of the allegations. *See Panini*, ECF No. 136 at 5:18-22, 7:4-5. The Court has also recognized that practical steps can be taken to move the parties "closer to hitting the ground running" after a motion to dismiss is issued. *See id.*, ECF No. 144 (Sept. 23, 2024 Hrg. Tr.) at 11:12-16. Fanatics' reproduction here of documents produced in *Panini* will accomplish precisely that; it will enable IPPs to identify custodians, plan third-party discovery, and avoid duplicating work performed in *Panini*. And in any event, where good cause is not otherwise shown, a "lack of prejudice does not justify a stay." *Bennett*, 2023 WL 2021560, at *5 (quotations omitted).

In summary, because IPPs' limited requests impose no undue burden on Fanatics, IPPs' claims are facially meritorious, and the limited discovery will expedite and promote efficiency in *Jones*, the discovery sought here should not be stayed.

Hon. Valerie Figueredo
October 29, 2025

Respectfully submitted,

*/s/ Gregory S. Asciolla*
Gregory S. Asciolla
Alexander E. Barnett
Jonathan S. Crevier
**DICELLO LEVITT LLP**
485 Lexington Avenue, Suite 1001
New York, NY 10017
Telephone: (646) 933-1000
gasciolla@dicellolevitt.com
abarnett@dicellolevitt.com
jcrevier@dicellolevitt.com

*/s/ William V. Reiss*
William V. Reiss
Ellen Jalkut
Jonathan Edelman
**ROBINS KAPLAN LLP**
1325 Avenue of the Americas, Suite 2601
New York, NY 10019
Telephone: (212) 980-7400
wreiss@robinskaplan.com
ejalkut@robinskaplan.com
jedelman@robinskaplan.com

*/s/ Christopher T. Micheletti*
Christopher T. Micheletti
Qianwei Fu
**ZELLE LLP**
555 12th Street, Suite 1230
Oakland CA 94607
Telephone: (415) 633-1912
cmicheletti@zellelaw.com
qfu@zellelaw.com

*Interim Co-lead Counsel for Plaintiffs and members of the Classes*

4