UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PHILLIP JONES; SAAD AMER; SEAN AULD; KYLENE COMEAU; DANIEL ENRIQUEZ; CHIP FURR; GLEN GAY; MITCHELL GOLDBERGER; STAVEN HODGE; BRUCE HONNOLD; JOSEPH KELLY; ALEXANDROS KOLAZAS; TIMOTHY MCCANN JR.; RYAN MEUSE; AARON MURPHY; EDGAR NAVA; JOHN SCHOLL; and RICHARD CRAIG SMITH on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

FANATICS, INC.; FANATICS, LLC; FANATICS COLLECTIBLES INTERMEDIATE HOLDCO, INC.; FANATICS SPV, LLC; FANATICS HOLDINGS, INC.; MAJOR LEAGUE BASEBALL; MAJOR LEAGUE BASEBALL PROPERTIES, INC.; MAJOR LEAGUE BASEBALL PLAYERS ASSOCIATION; MLB PLAYERS, INC.; NATIONAL FOOTBALL LEAGUE; NFL PROPERTIES LLC; NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION; NFL PLAYERS, INC.; NATIONAL BASKETBALL ASSOCIATION; NBA PROPERTIES, INC.; NATIONAL BASKETBALL ASSOCIATION PLAYERS ASSOCIATION; and ONETEAM PARTNERS LLC,

Defendants.

Case No. 1:25-cv-05776-LTS-VF

**ORAL ARGUMENT REQUESTED**

**DEFENDANTS FANATICS, NBA, NBPA, NFL, NFLPA, AND ONETEAM PARTNERS' SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF THEIR MOTIONS TO DISMISS THE AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

INTRODUCTION ..........1

ARGUMENT ..........2

I. *SCATURO* REQUIRES DISMISSAL OF THIS ACTION ..........3

II. *SCATURO* FORECLOSES PLAINTIFFS' CLAIMS FOR INJUNCTIVE RELIEF RELATING TO NFL CARDS ..........4

III. PLAINTIFFS' NBA CLAIMS SUFFER FROM THE SAME TIME-OF-FILING DEFECT ..........7

IV. PLAINTIFFS' MLB AND NBA CLAIMS DO NOT PLAUSIBLY ALLEGE CONCRETE, TRACEABLE OVERCHARGE INJURY ..........9

A. Plaintiffs Do Not Allege Concrete Injury-in-Fact ..........9

B. Plaintiffs Do Not Allege That Any Purported Overcharge Can Be Traced Through the Distribution Chain ..........10

C. Plaintiffs' Allegations of "Reduced Competition," "Reduced Product Choice," and "Lower Quality" Are Not Cognizable Injuries ..........11

V. CLASS STANDING DOES NOT CURE THE ABSENCE OF INDIVIDUAL STANDING ..........12

VI. *SCATURO* CONFIRMS THAT PLAINTIFFS' CLAYTON ACT AND STATE-LAW CLAIMS ALSO FAIL ..........12

VII. *Panini* Does Not Save Plaintiffs' Case ..........13

CONCLUSION ..........14

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Auld, et al. v. Fanatics, et al.*,
Case No. 1:25-cv-06825-LTS (S.D.N.Y.) ....7

*Bank v. NFL Props. LLC*,
2025 WL 2961849 (S.D.N.Y. Oct. 20, 2025) .... 8-9

*Calcano v. Swarovski N. Am. Ltd.*,
36 F.4th 68 (2d Cir. 2022) ....10

*City of Hartford v. Towns of Glastonbury*,
561 F.2d 1032 (2d Cir. 1976)....8

*Davis v. FEC*,
554 U.S. 724 (2008)....7

*Goldberger, et al. v. Fanatics, et al.*,
Case No. 1:25-cv-06369-LTS-VF (S.D.N.Y.)....7

*Jones v. Fanatics, Inc.*,
No. 1:25-cv-05776-LTS-VF (S.D.N.Y. Mar. 25, 2026) ....1, 7

*Kell v. Lily's Sweets, LLC*,
2024 WL 1116651 (S.D.N.Y. Mar. 13, 2024) ....9

*Lewis v. Casey*,
518 U.S. 343 (1996)....12

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)....7

*Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*,
19 F.4th 58 (2d Cir. 2021) ....10

*Mathias v. Daily News*,
L.P., 152 F. Supp. 2d 465 (S.D.N.Y. 2001)....12

*Nachman, et al. v. Fanatics, et al.*
Case No. 1:25-cv-06097-LTS-VF (S.D.N.Y.)....7

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
693 F.3d 145 (2d Cir. 2012)....12

*Panini America, Inc. v. Fanatics, Inc.*,
2025 WL 753954 (S.D.N.Y. Mar. 10, 2025) ..................................................................13

*Pollack v. U.S. Dep't of Justice*,
577 F.3d 736 (7th Cir. 2009) ..............................................................................................9

*Rebel Oil Co. v. Atl. Richfield Co.*,
51 F.3d 1421 (9th Cir. 1995) ............................................................................................12

*Sage Realty Corp. v. ISS Cleaning Servs. Grp., Inc.*,
936 F. Supp. 130 (S.D.N.Y. 1996)....................................................................................11

*Scaturo v. Fanatics, Inc.*,
No. 1:25-cv-02202-LTS-VF, 2026 WL 810372 (S.D.N.Y. Mar. 23, 2026).................... *passim*

*Somosky v. Consumer Data Indus. Ass'n*,
2022 WL 596480 (S.D.N.Y. Feb. 28, 2022)......................................................................11

## STATUTES

15 U.S.C. § 18...............................................................................................................12

## RULES

Fed. R. Civ. P.
12(b)(1) ...........................................................................................................2, 14
12(b)(6) ...........................................................................................................2, 14
15.........................................................................................................................8
15(a) ....................................................................................................................8
15(d)....................................................................................................................8

## TREATISES

6A Charles Alan Wright et al., Federal Practice and Procedure § 1504 (3d ed.
2010) ...................................................................................................................8

# INTRODUCTION

On March 23, 2026, this Court dismissed *Scaturo v. Fanatics, Inc.*—the related direct-purchaser action—for lack of Article III standing because "none of the named Plaintiffs adequately allege that they have overpaid or will imminently overpay for [NFL, NBA, or MLB] trading cards sold by Defendants." No. 1:25-cv-02202-LTS-VF, 2026 WL 810372, at *7 (S.D.N.Y. Mar. 23, 2026). Two days later, the Court directed the parties in this indirect-purchaser action to address "standing" and "any implications of *Scaturo* for the instant action." Order, *Jones v. Fanatics, Inc.*, No. 1:25-cv-05776-LTS-VF (S.D.N.Y. Mar. 25, 2026), ECF No. 185.

The implications are straightforward: *Scaturo* compels dismissal of the *Jones* Amended Consolidated Class Action Complaint, ECF No. 149 ("AC"), for lack of Article III standing. Like the *Scaturo* plaintiffs, the *Jones* plaintiffs could not have purchased newly issued, fully licensed NFL or NBA trading cards from Fanatics when they filed their lawsuit in July 2025 because Fanatics did not produce and distribute those cards—its competitor, Panini, did. And the *Jones* plaintiffs' claims of "higher prices" for any cards they did purchase are even more conclusory and speculative than those in *Scaturo*: while the *Scaturo* plaintiffs tried (unsuccessfully) to compare the prices of Topps and Panini baseball cards, the *Jones* plaintiffs rely entirely on anonymous Reddit posts and one-off remarks in a podcast and news article. Further, the case for dismissal is even stronger here because, unlike the *Scaturo* plaintiffs who claimed to have purchased cards directly from Fanatics, the *Jones* plaintiffs are purported indirect purchasers who rely on wholly conclusory pass-through allegations to try to connect Defendants' alleged conduct to the prices they paid to third-party retailers.

For the reasons previously set forth in Defendants' motions to dismiss, ECF Nos. 152 ("NFL Mot."), 154 ("MLBPA/PI's Mot."), 156 ("NFLPA Mot."), 158 ("NBA's Mot."), 161 ("OneTeam's Mot."), 162-1 ("MLB's Mot."), 168 ("Fanatics' Mot."), 169 ("NBPA's Mot."), and

in *Scaturo*, the Court should dismiss the AC under Rule 12(b)(1) or, in the alternative, under Rule 12(b)(6).

## ARGUMENT

*Scaturo* compels dismissal of the AC for multiple reasons. *First*, *Scaturo* holds that conclusory and speculative allegations of "higher prices," "reduced competition," "reduced product choice," and "lower quality," like those here, are "not sufficient to establish standing." 2026 WL 810372, at *7 & n.10. *Second*, Plaintiffs' NFL injunctive relief claim is non-justiciable because, as in *Scaturo*, "no named Plaintiff … purchased, or was even able to purchase, … a fully licensed NFL Trading Card" as of the filing of the lawsuit, *id.* at *7, and speculative assertions about future prices are insufficient to establish Article III standing. *Id.* at *10. *Third*, Plaintiffs' NBA claims suffer from the same time-of-filing defect: when these indirect-purchaser cases were filed in July and August 2025, Fanatics did not produce and distribute NBA cards, and post-filing purchases cannot cure a jurisdictional defect that existed at inception. *Fourth*, even if the Court considers two Plaintiffs' post-filing purchases of NBA cards from Fanatics, Plaintiffs' allegations of "inflated prices" for both NBA and MLB cards are "entirely conclusory," "speculative," and "cherry-picked." *Id.* at *11-12. And, as indirect purchasers relying on conclusory pass-through allegations, Plaintiffs' standing deficiencies are even more pronounced than those found fatal in *Scaturo*. *Fifth*, as the Court held in *Scaturo*, class standing cannot cure these defects where no named Plaintiff has established individual Article III standing. *Sixth*, Plaintiffs' Clayton Act and state-law claims against certain Defendants, although not asserted in *Scaturo*, depend on the same deficient theories of injury and likewise fail for lack of Article III standing. And *seventh*, *Scaturo* held that the *Panini* competitor action involved "fundamentally different theories of harm" from the consumer overcharge theory alleged here, *id.* at *9; *Panini*, therefore, does not help these Plaintiffs plead Article III injury.

## I. *SCATURO* REQUIRES DISMISSAL OF THIS ACTION

*Scaturo* dismissed all claims brought by direct purchasers of trading cards for lack of Article III standing because the plaintiffs failed to plead non-conclusory, plaintiff-specific overcharges for MLB cards, and they alleged only "conclusory and speculative" "future injury" for NBA and NFL cards that were "impossible" to purchase from Fanatics when the *Scaturo* action was filed. *Id.* at *6-13. The Court rejected the *Scaturo* plaintiffs' generalized references to "reduced competition," "reduced product choice," and "lower quality" because, absent "specific factual allegations to support [those] theories of harm" and allegations that the named plaintiffs "personally experienced" such harms, they could not satisfy the injury-in-fact requirement. *Id.* at *7 n.10. The *Scaturo* plaintiffs' forward-looking speculation about future price increases for NFL and NBA cards was "too hypothetical and conjectural to support Article III standing," particularly where Fanatics did not even make and sell newly issued, fully licensed NFL or NBA cards "at the time of the filing of the complaint," and where plaintiffs failed to offer "any concrete allegations about the price—past or future—of NBA Trading Cards or NFL Trading Cards." *Id.* at *8-10 (collecting cases). As to MLB cards, the Court found the *Scaturo* plaintiffs' two price graphs insufficient because they were not tied to any named plaintiff's purchases, did not establish product comparability or rule out non-anticompetitive explanations, and did not supply product-level price allegations for items the named plaintiffs bought. *Id.* at *11-12.

The same reasoning applies to this case. The *Jones* AC rests on the same generalized assertions of consumer harm: Plaintiffs claim, in conclusory fashion, that consumers "paid, and will continue to pay, higher prices" for MLB and NBA cards; that Defendants caused "reduced consumer choices" and "diminished quality"; and that there is a "significant threat of future injury" regarding NFL cards. AC ¶¶ 2-3, 19, 66-78, 180, 186-188, 193, 223-224, 230, 263-264. But the AC pleads no concrete, purchase-specific price allegations for any named plaintiff, no allegations

tying any price outcome to the alleged anticompetitive conduct, and no allegations plausibly demonstrating that the third-party retailers from which these indirect-purchaser plaintiffs bought trading cards (a) were overcharged and (b) passed through those overcharges to Plaintiffs. These deficiencies compelled dismissal in *Scaturo*, and they compel dismissal with even greater force here. *See Scaturo*, 2026 WL 810372, at *6-13.

## II. *SCATURO* FORECLOSES PLAINTIFFS' CLAIMS FOR INJUNCTIVE RELIEF RELATING TO NFL CARDS

Plaintiffs' theory of future injury relating to NFL trading cards in *Jones* is materially identical to the theory rejected in *Scaturo* and should be rejected for the same reasons. With no actual purchases of NFL cards, no concrete price allegations for NFL cards, and only conjecture about potential future purchases and future prices, Plaintiffs have alleged no injury—past, present, or future—with respect to NFL trading cards. Such allegations were insufficient to support standing for future injunctive relief in *Scaturo* against the NFL, NFL Properties, the NFLPA and NFL Players, Inc., and OneTeam Partners, and for the same reasons, they are insufficient here.

In both *Scaturo* and this action, Plaintiffs sought injunctive relief with respect to NFL trading cards. There are only two differences here, neither of which matters for purposes of the standing analysis: Plaintiffs here (1) limit their claims to injunctive relief; and (2) allege that they purchased non-NFL cards indirectly, as opposed to directly from a Defendant. Neither difference allows Plaintiffs to escape the reasoning in *Scaturo* compelling dismissal of their claims.

As in *Scaturo*, the standing inquiry focuses on the time the original complaints were filed and asks "whether named Plaintiffs have suffered a past injury and whether they will imminently suffer a future injury." *Scaturo*, 2026 WL 810372, at *7. As to the past, "no named Plaintiff suffered an injury because there is no allegation that any named Plaintiff purchased, or was even able to purchase, … a fully licensed NFL Trading Card at the time" the original complaints were

filed. *Id.*[1] As to future injury, Plaintiffs here allege no more than in *Scaturo*, and their allegations are thus "too conclusory and speculative to support standing." *Id.*

In all pertinent respects, the allegations here mirror those in *Scaturo*:

- "Fanatics engaged in anticompetitive conduct towards third-party distributors,"
- "Fanatics has threatened to cut off supply to local card shops,"
- "Fanatics has forced case breakers onto Fanatics' new case-breaking platform (Fanatics Live) … and then imposed draconian terms to drive them out of business," and
- "Fanatics has 'coerc[ed] big box retailers to limit the lines of trading cards offered in their stores to only those owned by Fanatics/Topps.'" *Compare* 2026 WL 810372, at *9 *with* AC ¶¶ 155-166.

Putting aside the fact that none of these allegations involve conduct by the NFL, NFL Properties, NFLPA, NFL Players, Inc., or OneTeam Partners, as in *Scaturo*, Plaintiffs' AC "fails to specify how any of these allegations relate to … fully licensed NFL Trading Cards, given that Fanatics was unable to sell such cards as of the filing" of these actions. 2026 WL 810372, at *9. And "there is simply no factual basis for an inference that such future conduct will come to bear." *Id.*

Plaintiffs' allegation of Fanatics' conduct vis-à-vis Panini fares no better here than in *Scaturo*. *Compare* 2026 WL 810372, at *9-10 *with* AC ¶¶ 128-154, 167-172. Here, too, "Plaintiffs … fail to show how these allegations have any bearing on whether named Plaintiffs will pay supracompetitive prices for trading cards, as none of these allegations address price at all." 2026

---

[1] Even if Plaintiffs' later AC, filed on December 22, 2025, were treated as the operative complaint for purposes of Article III standing analysis (*see infra* Part III), the named Plaintiffs did not—and could not—allege that they had purchased any Fanatics-produced fully licensed NFL trading cards because Fanatics did not hold the licenses needed to make such cards until April 2026. AC ¶¶ 134, 153, 174. As the Court held in *Scaturo*, at the time the operative complaint was filed, "it was actually impossible for any consumer" to purchase a Fanatics-produced fully licensed NFL trading card. 2026 WL 810372, at *7.

WL 810372, at *9. Nor does this Court's *Panini* decision control here any more than it did in *Scaturo*, as "named Plaintiffs fail to plead any concrete facts supporting their claim that they will pay higher prices for trading cards," and "the injuries alleged here are fundamentally different from the injuries Panini claimed to have suffered." *Id.; see infra* Part VII.

In the end, as in *Scaturo*, the AC "is devoid of any concrete allegations about the price—past or future—of … NFL Trading Cards." 2026 WL 810372, at *10. Allegations about MLB trading card prices cannot fill the void, as "there is no allegation connecting the price of MLB Trading Cards to those of NBA Trading Cards or NFL Trading Cards." *Id.*[2] Rather, "[i]f anything, Plaintiffs have suggested that prices for trading cards in one sport are not affected by prices for trading cards in another sport." *Id.*; *see* AC ¶ 99 (alleging that "many consumers do not view trading cards for players from one League as interchangeable with cards for players from another League … For example, some consumers do not view MLB trading cards as interchangeable with NFL trading cards."). Thus, even if Plaintiffs were to buy NFL trading cards in the future, they have not plausibly alleged that the cards will cost more due to allegedly anticompetitive conduct. *See* NFL Mot. at 8-9; NFLPA Mot. at 14-15.

As the NFL, NFLPA, and Fanatics argue in their Motions to Dismiss, and as the Court recognized in *Scaturo*, "any allegations as to the future prices of … fully licensed NFL Trading Cards are too hypothetical and conjectural to support Article III standing." 2026 WL 810372, at *10; *see also* NFL Mot. at 2, 7; NFLPA Mot. at 14-15; Fanatics Mot. at 14-15. Indeed, the AC does not include any allegation that Plaintiffs have purchased fully licensed NFL trading cards in the past, or that they intend to purchase NFL trading cards in the future. *E.g.*, AC ¶¶ 26-43

[2] As discussed *infra* Part IV, Plaintiffs' allegations of supposed price increases for MLB trading cards are speculative and deficient in the first place. *See Scaturo*, 2026 WL 810372, at *10-12 (rejecting allegations about MLB trading card price increases).

(describing past purchases of NBA and MLB trading cards and alleging that named Plaintiffs will suffer future injury because "Defendants' anticompetitive conduct will inflate the prices of any future purchases of Pro Sports Trading Cards"). Allegations that merely suggest Plaintiffs *might* purchase NFL trading cards in the future "fail[] because 'some day intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the actual or imminent injury that our cases require.'" *Scaturo*, 2026 WL 810372, at *12 (*quoting Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992)); *see* NFL Mot. at 8; NFLPA Mot. at 14-15.[3]

## III. PLAINTIFFS' NBA CLAIMS SUFFER FROM THE SAME TIME-OF-FILING DEFECT

Plaintiffs admit they could not have purchased newly issued, fully licensed NBA cards produced by Fanatics when they filed their lawsuits in July and August 2025, because Fanatics' NBA licenses did not take effect until October 2025.[4] AC ¶¶ 2, 69, 113, 153. Nonetheless, Plaintiffs attempt an end-run around Article III by alleging post-filing purchases of NBA cards in their consolidated complaint filed on October 6, 2025—just days after Fanatics' NBA licenses

---

[3] Even if Plaintiffs were to buy NFL trading cards once the NFL-Fanatics license takes effect, Plaintiffs would *still* not be able to manufacture standing where none existed at the outset. The Supreme Court is clear that the time-of-filing rule governs, and post-filing events cannot retroactively supply standing. *See Davis v. FEC*, 554 U.S. 724, 734 (2008) ("[T]he standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed."); *Lujan*, 504 U.S. at 571 n.4 (standing is "assessed under the facts existing when the complaint is filed"); *see also infra* Part III.

[4] Plaintiffs initiated four separate lawsuits. Plaintiff *Jones* filed his first complaint on July 14, 2025. *Jones v. Fanatics, et al.*, Case No. 1:25-cv-05776-LTS-VF (S.D.N.Y.), ECF No. 1. The *Nachman* plaintiffs filed their complaint on July 24, 2025. *Nachman, et al. v. Fanatics, et al.*, Case No. 1:25-cv-06097-LTS-VF (S.D.N.Y.), ECF No. 1. The *Goldberger* plaintiffs filed their complaint on August 1, 2025. *Goldberger, et al. v. Fanatics, et al.*, Case No. 1:25-cv-06369-LTS-VF (S.D.N.Y.), ECF No. 1. And the *Auld* plaintiffs filed their complaint on August 18, 2025. *Auld, et al. v. Fanatics, et al.*, Case No. 1:25-cv-06825-LTS (S.D.N.Y.), ECF No. 1. On August 14, 2025, the *Jones*, *Nachman*, and *Goldberger* actions were consolidated; *Auld* was later consolidated on September 4, 2025.

took effect—and again in their AC filed on December 22, 2025. These efforts to save the original complaints with post-filing events are both procedurally improper and fail on the merits.

In *Scaturo*, the Court held that the plaintiffs could not rely on a purchase of NBA cards after the complaint was filed because "standing is assessed at the time of the filing of the complaint" and "Plaintiffs must move to supplement their complaint under Rule 15(d) by amending it further to incorporate the subsequent events." 2026 WL 810372, at *8. Similarly, here, Plaintiffs attempted to back-door post-filing events into the case through amendments under Rule 15(a), rather than seeking leave to supplement their original pleading under Rule 15(d). It is well established that an amended complaint may only "relate to matters that occurred prior to the filing of the original pleading," not to "transactions, occurrences, or events that happened after the date of the pleading to be supplemented." 6A Charles Alan Wright et al., Federal Practice and Procedure § 1504 (3d ed. 2010). Plaintiffs improperly added allegations of post-lawsuit purchases of NBA cards to both their October 6, 2025 consolidated complaint and their December 22, 2025 AC, without seeking the Court's leave.

Even setting aside Plaintiffs' Rule 15 violations, the Court should reject Plaintiffs' reliance on events occurring after the commencement of this lawsuit to try to establish standing. "Events occurring after the filing of the complaint cannot operate so as to create standing where none previously existed," because any other rule would invite plaintiffs to race to the courthouse and file lawsuits based on speculation or "mere hope" that a constitutional controversy will materialize. *City of Hartford v. Towns of Glastonbury,* 561 F.2d 1032, 1051 n.3 (2d Cir. 1976) (en banc; plurality opinion). For this reason, "the plaintiffs' standing must be judged as of the time [the] action was commenced." *Id.*; *see also Bank v. NFL Props. LLC*, 2025 WL 2961849, at *8-9 (S.D.N.Y. Oct. 20, 2025) (explaining that "the weight of authority in this Circuit distinguish[es]

between defective *jurisdiction* and defective *allegations of jurisdiction*," and holding that because the "court lacked subject matter jurisdiction over [plaintiff's] initial complaint . . . seeking leave to amend his complaint would have been futile"), *appeal docketed*, No. 25-2940 (2d Cir. Nov. 19, 2025).

Here, the action was "commenced" in July and August 2025—at a time when Fanatics did not make and distribute newly issued, fully licensed NBA cards. Allowing Plaintiffs to manufacture standing that did not exist at the outset of this action through successive (and procedurally defective) amended complaints would invite litigants to file placeholder cases hoping standing might later emerge. *See Pollack v. U.S. Dep't of Justice*, 577 F.3d 736, 742 n.2 (7th Cir. 2009) ("[A] plaintiff must establish standing at the time suit is filed and cannot manufacture standing afterwards."). Article III demands more.

## IV. PLAINTIFFS' MLB AND NBA CLAIMS DO NOT PLAUSIBLY ALLEGE CONCRETE, TRACEABLE OVERCHARGE INJURY

Even if the Court considers the alleged post-filing purchases of NBA cards, Plaintiffs' MLB and NBA theories both fail under *Scaturo*.

### A. Plaintiffs Do Not Allege Concrete Injury-in-Fact

Plaintiffs fail to allege any product-level facts related to the price of any MLB or NBA cards that any named Plaintiff supposedly purchased, instead relying on generalized assertions that consumers "paid artificially inflated prices." AC ¶¶ 26-43. Beyond that conclusory assertion, Plaintiffs simply cite one-off Reddit posts, a podcast remark, and an article about products they do not claim to have purchased. *Id.* ¶¶ 180, 182, 186. Such "cherry-picked examples of alleged overcharge cannot 'be reasonably extrapolated to the [named Plaintiffs'] individual purchase[s].'" *Scaturo*, 2026 WL 810372, at *12 (quoting *Kell v. Lily's Sweets, LLC*, 2024 WL 1116651, at *4 (S.D.N.Y. Mar. 13, 2024)); *see also* Fanatics' Mot. at 7-14.

Further, *Scaturo* instructs that even where a complaint includes product-level price allegations (such as comparison graphs), a plaintiff still must plausibly (1) connect those prices to purchases by the named plaintiffs, (2) establish product comparability, (3) tie alleged price movements to the challenged conduct, and (4) rule out non-anticompetitive explanations. 2026 WL 810372, at *11-12. The *Jones* AC does none of that. It "does not explain whether [any purported] difference in prices was traceable to extraneous factors, such as production costs or quality differences, or whether the difference was traceable to Defendants' anticompetitive conduct." *Scaturo*, 2026 WL 810372, at *11; *see also* Fanatics' Mot. at 10. Plaintiffs do not even attempt to plead how much the prices of MLB and NBA cards supposedly increased, over what period, or why any alleged increases were not attributable to increased costs, inflation, or other non-anticompetitive factors. Plaintiffs' promise of a future regression analysis to measure alleged overcharges, AC ¶ 201, does not "permit the Court to accept conclusory allegations with no factual support." *Scaturo*, 2026 WL 810372, at *12. Article III requires plausible, present-tense factual allegations of concrete injury; conclusory statements and promises of future analyses do not suffice. *Id.* at *5-7, *11 (*citing Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 75 (2d Cir. 2022); *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 65-66 (2d Cir. 2021)).

### B. Plaintiffs Do Not Allege That Any Purported Overcharge Can Be Traced Through the Distribution Chain

Plaintiffs here are purported indirect purchasers. Their claims thus necessarily depend on a pass-through theory of harm—*i.e.*, that Fanatics overcharged distributors and third-party retailers, who then passed on such overcharges to Plaintiffs. Yet Plaintiffs fail to plausibly allege their pass-through theory; instead, they offer only the conclusory statement that wholesale pricing and retail policies "were passed on" to consumers, without alleging any facts showing that a named Plaintiff's specific purchase reflected a supracompetitive overcharge rather than ordinary

commercial variance among the myriad independent sellers that might adjust their retail prices for any number of reasons. *See* AC ¶¶ 3, 61-63, 186-188, 202-207. That is insufficient to plead that any alleged overcharge is "fairly traceable" to Defendants, as Article III requires.[5] *Scaturo*, 2026 WL 810372, at *11-12 (*citing Somosky v. Consumer Data Indus. Ass'n*, 2022 WL 596480, at *3 (S.D.N.Y. Feb. 28, 2022)); *see also* Fanatics' Mot. at 11.

### C. Plaintiffs' Allegations of "Reduced Competition," "Reduced Product Choice," and "Lower Quality" Are Not Cognizable Injuries

Nor can Plaintiffs manufacture Article III standing by relying on buzzwords like "reduced competition," "reduced product choice," or "lower quality," instead of well-pleaded factual allegations. *See Sage Realty Corp. v. ISS Cleaning Servs. Grp., Inc.*, 936 F. Supp. 130, 135 (S.D.N.Y. 1996) ("[A]n antitrust complaint is insufficient if it simply contains conclusory allegations which merely recite the litany of antitrust.") (citation omitted). *Scaturo* held that such general theories, without well-pleaded facts showing that the named plaintiffs themselves encountered higher prices, fewer options, or inferior quality in their transactions, do not amount to an injury-in-fact. 2026 WL 810372, at *7 n.10. As the Court explained, "'reduced competition,' in and of itself, is not a cognizable 'injury-in-fact' suffered by consumers," and broad claims about "choice" and "quality" are not sufficiently specific. *Id.* Plaintiffs offer similarly factually unsupported and untethered claims, relying on anonymous Reddit posts, a podcast remark, and an article (that, in fact, overwhelmingly praises Fanatics' trading cards). *See* AC ¶¶ 180, 182, 186. As in *Scaturo*, these generalized and cherry-picked allegations are insufficient. 2026 WL 810372,

---

[5] *Scaturo* rejected the plaintiffs' reliance on Fanatics' alleged conduct directed at distributors, retailers, and case breakers because the named plaintiffs' overcharge theory and class definition did not implicate those channels and no facts tied that alleged conduct to a concrete overcharge borne by the plaintiffs. 2026 WL 810372, at *9-10.

at *7 n.10 (citing *Mathias v. Daily News*, L.P., 152 F. Supp. 2d 465, 479 (S.D.N.Y. 2001); *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir. 1995)).

## V. CLASS STANDING DOES NOT CURE THE ABSENCE OF INDIVIDUAL STANDING

Plaintiffs cannot cure their lack of standing through their class allegations. *Scaturo* holds that class standing is "irrelevant" where no named plaintiff first satisfies Article III. 2026 WL 810372, at *12-13 (*citing NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012)); *see id.* at *6 (*citing Lewis v. Casey*, 518 U.S. 343, 357 (1996)). Indeed, "[t]he requirements of Article III standing are no less demanding in the class action context than they are for individual plaintiffs." *Id.* at *6. Here, Plaintiffs' class definitions cannot overcome the absence of concrete, plaintiff-specific allegations of injury, causation, and redressability. Because no named Plaintiff has plausibly alleged an overcharge for any MLB or NBA card he or she actually purchased, or an imminent NFL card overcharge, the Court need not reach any "same set of concerns" inquiry for absent class members. *Id.* at *12-13.

## VI. *SCATURO* CONFIRMS THAT PLAINTIFFS' CLAYTON ACT AND STATE-LAW CLAIMS ALSO FAIL

Plaintiffs' claims under Section 7 of the Clayton Act and various state laws rest on the same deficient theory of injury, and thus likewise fail for lack of Article III standing.[6] AC ¶ 235 (alleging in conclusory fashion that Fanatics' acquisition of GCP caused "reduced access to Pro Sports Trading Cards and reduced and delayed Pro Sports Trading Cards releases"); *id.* ¶ 242 (alleging in conclusory fashion that Fanatics' acquisition of Topps caused "increased barriers to entry in the Relevant Markets and foreclosed competition in and for the Relevant Markets,"

[6] Plaintiffs do not assert any state-law claims against the NFL, NFL Properties, NFLPA, or NFL Players, Inc., and Plaintiffs' Clayton Act claims are asserted against Fanatics only.

without explaining how *consumers* were supposedly harmed); *id.* ¶ 283 (alleging in conclusory fashion that in "each of the [listed] jurisdictions," Fanatics' alleged conduct "restrained" "price competition," "artificially inflated" prices, "diminished" "product quality," and "reduced" "consumer choice").

In addition, *Scaturo* reinforces that the other deficiencies identified in Defendants' motions to dismiss are fatal. In particular, the absence of concrete price allegations and the failure to exclude non-anticompetitive explanations for purported price changes defeat any plausible allegation of anticompetitive effects. *See* Fanatics' Mot. at 7-14. These same failures are fatal to Plaintiffs' Clayton Act claims because there are no plausible allegations that either the GCP investment or the Topps acquisition increased market concentration or reduced consumer-level output. Plaintiffs' allegations of harm for their Clayton Act claims are "conclusory" and "without any specific factual support," just like their allegations of harm for the Sherman Act claims. *See Scaturo*, 2026 WL 810372, at *11; *see also* Fanatics' Mot. at 17-20. And Plaintiffs' 73 different state-law claims are derivative of the same theories of harm and therefore fail under *Scaturo* and for the reasons identified in the motions to dismiss. *See* Fanatics' Mot. at 20-26.

## VII. *PANINI* DOES NOT SAVE PLAINTIFFS' CASE

*Scaturo* explains why the Court's decision in *Panini America, Inc. v. Fanatics, Inc.*, 2025 WL 753954 (S.D.N.Y. Mar. 10, 2025), which sustained antitrust claims filed by Fanatics' competitor, does not control in a putative consumer class action like this one. 2026 WL 810372, at *9-10. The Court emphasized in *Scaturo* that *Panini* involved a "fundamentally different" market-exclusion theory of harm alleged by a direct competitor—not a consumer overcharge injury. *Id.* at *9. As the Court further explained, "[c]onsumer overcharge injuries were never at issue in *Panini*, and the Court never considered whether Fanatics had actually set prices at supracompetitive levels." *Id.* at n.17. Thus, to the extent Plaintiffs "ask [the Court] to infer, based

on allegations of Fanatics' monopolization and harm to Fanatics' competitor, Panini, that Fanatics has increased prices," "that inferential leap is simply too great." *Id.* at *10.

## **CONCLUSION**

For the reasons set forth above and consistent with *Scaturo*, the Court should dismiss the AC in full under Rule 12(b)(1) or, in the alternative, under Rule 12(b)(6).

Dated: April 15, 2026

Respectfully submitted,[7]

/s/ Jeffrey Brown*
Jeffrey Brown
**Dechert LLP**
Three Bryant Park
1095 Avenue of the Americas
New York, NY
(212) 698-3511
jeffrey.brown@dechert.com

George G. Gordon (*pro hac vice*)
Julia E. Chapman (*pro hac vice*)
Forrest E. Lovett (*pro hac vice*)
**Dechert LLP**
Cira Centre, 2929 Arch Street
Philadelphia, PA 19104
Tel.: (215) 994-4000
Fax: (215) 994-2222
george.gordon@dechert.com
julia.chapman@dechert.com
forrest.lovett@dechert.com

Elena Kamenir (*pro hac vice*)
**Dechert LLP**
1900 K Street, NW
Washington, D.C. 20006
Tel.: (202) 261-3482
Fax: (202) 261-3333
elena.kamenir@dechert.com

*Counsel for Defendant OneTeam Partners LLC*

/s/ Lawrence E. Buterman
Lawrence E. Buterman
**Latham & Watkins LLP**
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1264
lawrence.buterman@lw.com

Amanda P. Reeves (*pro hac vice*)
David L. Johnson (*pro hac vice*)
**Latham & Watkins LLP**
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200
amanda.reeves@lw.com
david.johnson@lw.com

Christopher S. Yates (*pro hac vice*)
Alicia R. Jovais (*pro hac vice*)
**Latham & Watkins LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600
chris.yates@lw.com
alicia.jovais@lw.com

*Attorneys for Defendants Fanatics, Inc., Fanatics, LLC, Fanatics Collectibles Intermediate Holdco, Inc., Fanatics SPV, LLC, and Fanatics Holdings, Inc.*

---

[7] Fanatics uses electronic signatures with consent in accordance with Rule 8.5(b) of the Court's ECF Rules and Instructions.

*/s/ Richard C. Pepperman II**
Richard C. Pepperman II
Benjamin R. Walker
Sheeva L. Nesva
**Sullivan & Cromwell LLP**
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
peppermanr@sullcrom.com
walkerb@sullcrom.com
nesvas@sullcrom.com

*Counsel for Defendants National Basketball Association and NBA Properties, Inc.*

*/s/ Bradley I. Ruskin**
Bradley I. Ruskin
David A. Munkittrick
Jeffrey H. Warshafsky
Tara M. Brailey
**Proskauer Rose LLP**
11 Times Square
New York, NY 10036
bruskin@proskauer.com
dmunkittrick@proskauer.com
jwarshafsky@proskauer.com
tbrailey@proskauer.com

Colin R. Kass (*pro hac vice*)
**Proskauer Rose LLP**
101 Pennsylvania Avenue, N.W.
Suite 600 South
Washington, D.C. 20004
ckass@proskauer.com

*Counsel for National Football League and NFL Properties LLC*

*/s/ Jeffrey L. Kessler**
Jeffrey L. Kessler
David L. Greenspan
Adam I. Dale
Sarah L. Viebrock
**Winston & Strawn LLP**
200 Park Avenue
New York, NY 10166
(212) 294-6700
jkessler@winston.com
dgreenspan@winston.com
aidale@winston.com
sviebrock@winston.com

*Counsel for Defendants National Football League Players Association and NFL Players, Inc.*

*/s/ C. Scott Lent**
C. Scott Lent
Esther Ha Yoon Sohn
Timothy A. Roche (pro hac vice)
**Arnold & Porter Kaye Scholer LLP**
250 W. 55th Street
New York, NY 10019
Tel: (212) 836-8220
Fax: (212) 836-8689
scott.lent@arnoldporter.com
tim.roche@arnoldporter.com

Keron J. Morris (*pro hac vice*)
**Arnold & Porter Kaye Scholer LLP**
601 Massachusetts Ave., NW
Washington, DC 20001
Tel: (202) 942-6537
Fax: (202) 942-5999
keron.morris@arnoldporter.com

*Counsel for Defendant National Basketball Players Association*

**CERTIFICATION OF WORD COUNT COMPLIANCE**

I, Lawrence E. Buterman, hereby certify that Defendants Fanatics, NBA, NBPA, NFL, NFLPA, and OneTeam Partners' Supplemental Brief in Further Support of their Motions to Dismiss the Amended Consolidated Class Action Complaint complies with the word-count limitations set forth in Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York and Section A.2h of Chief Judge Laura Taylor Swain's Individual Practices. According to the word processing software used to prepare this document, the memorandum contains 4,378 words, excluding the parts of the document exempted by Section A.2h.

*/s/ Lawrence E. Buterman*
Lawrence E. Buterman