UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PHILLIP JONES; SAAD AMER; SEAN AULD; KYLENE COMEAU; DANIEL ENRIQUEZ; CHIP FURR; GLEN GAY; MITCHELL GOLDBERGER; STAVEN HODGE; BRUCE HONNOLD; JOSEPH KELLY; ALEXANDROS KOLAZAS; TIMOTHY MCCANN JR.; RYAN MEUSE; AARON MURPHY; EDGAR NAVA; JOHN SCHOLL; and RICHARD CRAIG SMITH on behalf of themselves and all others similarly situated,

*Plaintiffs*,

v.

FANATICS, INC.; FANATICS, LLC; FANATICS COLLECTIBLES INTERMEDIATE HOLDCO, INC.; FANATICS SPV, LLC; FANATICS HOLDINGS, INC.; MAJOR LEAGUE BASEBALL; MAJOR LEAGUE BASEBALL PROPERTIES, INC.; MAJOR LEAGUE BASEBALL PLAYERS ASSOCIATION; MLB PLAYERS, INC.; NATIONAL FOOTBALL LEAGUE; NFL PROPERTIES LLC; NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION; NFL PLAYERS INC.; NATIONAL BASKETBALL ASSOCIATION; NBA PROPERTIES, INC.; NATIONAL BASKETBALL PLAYERS ASSOCIATION; and ONETEAM PARTNERS LLC,

*Defendants*.

Case No. 1:25-cv-05776-LTS-VF

**ORAL ARGUMENT REQUESTED**

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION OF CLAIMS OF PLAINTIFFS SAAD AMER, SEAN AULD, DANIEL ENRIQUEZ, CHIP FURR, GLEN GAY, MITCHELL GOLDBERGER, STAVEN HODGE, ALEXANDROS KOLAZAS, TIMOTHY MCCANN, RYAN MEUSE, AARON MURPHY, AND EDGAR NAVA**

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ....... 1

II. ARGUMENT ....... 2

A. The Parties Delegated Arbitrability to the Arbitrator ....... 2

B. Even if the Court Reaches the Scope Question, Plaintiffs' Claims Fall Within the Arbitration Agreement ....... 5

1. Plaintiffs Ignore the Arbitration Agreement's Broad Language ....... 5

2. The Alleged Scheme and Arbitration Clause Are Different From *Davitashvili* ....... 6

C. Enforcing the Arbitration Provision Is Neither Unconscionable Nor Absurd ....... 7

D. Plaintiffs Must Arbitrate Their Claims Against MLBPI/A, MLB, NBPA, and NBA ....... 8

E. The Court Should Stay the Remaining Plaintiffs' Claims ....... 11

III. CONCLUSION ....... 11

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013)....5

*Colony Cap. Inc. v. Flaherty*,
2022 WL 2440993 (S.D.N.Y. July 5, 2022)....9

*Consol. Precision Prods. Corp. v. Gen. Elec. Co.*,
2016 WL 2766662 (S.D.N.Y. May 12, 2016)....3

*Contec Corp. v. Remote Sol., Co.*,
398 F.3d 205 (2d Cir. 2005)....10, 11

*Davitashvili v. Grubhub Inc.*,
131 F.4th 109 (2d Cir. 2025).... *passim*

*DDK Hotels, LLC v. Williams-Sonoma, Inc.*,
6 F.4th 308 (2d Cir. 2021)....4

*Delgado v. Donald J. Trump for President, Inc.*,
2022 WL 767166 (S.D.N.Y. Mar. 14, 2022)....4

*Denney v. BDO Seidman, L.L.P.*,
412 F.3d 58 (2d Cir. 2005)....9

*Doe v. Trump Corp.*,
6 F.4th 400 (2d Cir. 2021)....9

*Douzinas v. Am. Bureau of Shipping*,
888 A.2d 1146 (Del. Ch. 2006)....9, 10

*Foran v. NFL*,
2019 WL 2408030 (S.D.N.Y. June 7, 2019)....2

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019)....1, 2, 7

*Hikers Indus., Inc. v. William Stuart Indus. (Far E.) Ltd.*,
640 F. Supp. 175 (S.D.N.Y. 1986)....11

*Johnston v. Electrum Partners LLC*,
2018 WL 3094918 (S.D.N.Y. June 21, 2018)....9

*Loc. Union 97, IBEW v. Niagara Mohawk Power Corp.*,
67 F.4th 107 (2d Cir. 2023) ....................................................................................6

*Maldonado v. NFL*,
2023 WL 4580417 (S.D.N.Y. July 18, 2023) ...........................................................1, 2, 4, 10

*McFarlane v. Altice USA, Inc.*,
524 F. Supp. 3d 264 (S.D.N.Y. 2021)..........................................................................8

*Metro. Life Ins. Co. v. Bucsek*,
919 F.3d 184 (2d Cir. 2019)........................................................................................4

*Motorola Credit Corp. v. Uzan*,
388 F.3d 39 (2d Cir. 2004)..........................................................................................9

*NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*,
770 F.3d 1010 (2d Cir. 2014)......................................................................................4

*Querette v. Chromalloy Gas Turbine LLC*,
2023 WL 145014 (S.D.N.Y. Jan. 10, 2023) .................................................................4

*Ragone v. Atl. Video at Manhattan Ctr.*,
595 F.3d 115 (2d Cir. 2010)........................................................................................7

*Ramasamy v. Essar Glob. Ltd.*,
825 F. Supp. 2d 466 (S.D.N.Y. 2011)..........................................................................8

*Rodriguez v. FDIC*,
589 U.S. 132 (2020)....................................................................................................9

*Shaw Grp. Inc. v. Triplefine Int'l Corp.*,
322 F.3d 115 (2d Cir. 2003)........................................................................................3

*Spinelli v. NFL*,
96 F. Supp. 3d 81 (S.D.N.Y. 2015) ............................................................................6

*Valdes v. Swift Transp. Co.*,
292 F. Supp. 2d 524 (S.D.N.Y. 2003)..........................................................................7

*Wilcox & Fetzer, Ltd. v. Corbett & Wilcox*,
2006 WL 2473665 (Del. Ch. Aug. 22, 2006) ...........................................................6, 9

*Winter Invs., LLC v. Panzer*,
2015 WL 5052563 (S.D.N.Y. Aug. 27, 2015)..............................................................11

## I. INTRODUCTION

The Arbitration Plaintiffs concede they had reasonable notice of, and assented to, the arbitration agreement in the Terms of Use ("TOU") governing Fanatics.com and MLBShop.com.[1] Plaintiffs' primary argument is about the *scope* of their arbitration agreement: they claim their antitrust claims are not "connected with" Fanatics' websites—and thus not arbitrable—because Plaintiffs are indirect purchasers whose claims "relate exclusively to purchases from non-Fanatics entities." ECF No. 191 ("Opp.") at 5. This argument fails for two primary reasons.

*First*, any dispute about scope was delegated to the arbitrator, and therefore the Court "may not decide" it. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019). As another court in this District held, the "very broad" language of Fanatics' arbitration agreement, plus the express "incorporation of the AAA rules," "reflect an intention to have the arbitrator decide whether any disputes are covered by the agreement." *Maldonado v. NFL*, 2023 WL 4580417, at *5 (S.D.N.Y. July 18, 2023). Thus, any challenge to the scope of the arbitration agreement must be resolved in arbitration.

*Second*, even if the arbitration agreement's scope were a question for the Court, it covers Plaintiffs' antitrust claims. Plaintiffs agreed to arbitrate "any and all disputes, claims and causes of action" that are "connected with the Properties," *i.e.*, Fanatics.com or MLBShop.com. ECF Nos. 165-1, 165-14. Plaintiffs' antitrust claims are "connected with" Fanatics.com and MLBShop.com because they allege Fanatics and other Defendants engaged in an "anticompetitive scheme" resulting in "harm [to] competition in the market for Pro Sports Trading Cards"—a market encompassing *all* newly issued, fully licensed NFL, NBA, and MLB trading cards sold via

---

[1] Terms not otherwise defined herein have the meaning ascribed in Moving Defendants' opening brief. *See* ECF No. 164 ("Mot.").

any channel, *including* those sold on Fanatics.com and MLBShop.com. *Davitashvili v. Grubhub Inc.*, 131 F.4th 109 (2d Cir. 2025), addressed fundamentally different claims and contract language, and only reached the agreement's scope because the contract expressly delegated arbitrability questions to the court. *Id.* at 117–18.

Plaintiffs' remaining arguments fare no better. Plaintiffs claim that enforcing the arbitration agreement would be unconscionable or produce an absurd result because their claims "lack any nexus" to the TOU, but that merely repackages Plaintiffs' flawed scope argument. And, under the doctrine of equitable estoppel, Plaintiffs must arbitrate their claims against non-signatory Defendants MLB, MLBPI/A, NBA, and NBPA because Plaintiffs allege coordinated conduct between Fanatics and each non-signatory that is inseparable from the claims against Fanatics.

The Court should grant Defendants' Motion.

## II. ARGUMENT

### A. The Parties Delegated Arbitrability to the Arbitrator

Plaintiffs challenge the scope of the arbitration agreement—a task clearly and unmistakably delegated to the arbitrator, not the Court. *See Henry Schein*, 586 U.S. at 71 (courts may not decide issues clearly and unmistakably delegated to arbitrator); *Maldonado*, 2023 WL 4580417, at *5 (same TOU delegated arbitrability). Plaintiffs argue that the parties did not agree to delegate arbitrability, Opp. at 8–13, but their arguments fail.

To decide whether arbitrability was delegated, courts ask whether (1) there is "[b]road language expressing an intention to arbitrate all aspects of all disputes," and (2) the "parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability." *Foran v. NFL*, 2019 WL 2408030, at *2 (S.D.N.Y. June 7, 2019). Plaintiffs concede the second factor: the TOU incorporate the AAA Consumer Rules, which expressly empower the arbitrator to decide arbitrability issues. *See* Mot. at 23–24. Regarding the first factor, Plaintiffs claim the arbitration

provision is "ambiguous" because the Fanatics TOU contain (1) a waiver of rights and (2) certain narrow carveouts. The Court should reject both arguments.

***Waiver of Rights.*** Plaintiffs claim the arbitration provision "narrows its own scope by specifying what is being waived," Opp. at 9, because the TOU states: "You understand and agree that you are waiving your right to sue or go to court to assert or defend your rights under this contract" (Fanatics.com) or "under these shop terms" (MLBShop.com). Mot. at 8, 14–15. Plaintiffs try to manufacture ambiguity where there is none. The first sentence of the arbitration provision broadly states that "any and all … claims … arising out of or connected with the Properties" (Fanatics.com) or "with MLB Shop Website" (MLBShop.com) "shall be resolved exclusively by binding arbitration." *Id.* at 8, 14. The subsequent reference to waiving the right to bring in court claims asserting rights under the contract is one application of the parties' broad agreement to arbitrate; it does not somehow limit the arbitration provision.

***Carveouts.*** Plaintiffs next argue that two carveouts in the arbitration agreement—for seeking "a court injunction regarding intellectual property infringement" or "temporary or emergency equitable relief to enforce [a party's] rights in any court of competent jurisdiction"—render the arbitration agreement ambiguous. Opp. at 10–11. This argument fails too. Courts in this Circuit regularly find that arbitrability is delegated to an arbitrator despite carveouts that are inapplicable to the dispute at hand. *See, e.g.*, *Consol. Precision Prods. Corp. v. Gen. Elec. Co.*, 2016 WL 2766662, at *6 (S.D.N.Y. May 12, 2016) ("limited exception" to arbitration for intellectual property claims not applicable). Indeed, Plaintiffs' own case, *Shaw Group Inc. v. Triplefine Int'l Corp.*, involved a "qualified" arbitration clause, and the Court still held the parties clearly intended to arbitrate issues of arbitrability. 322 F.3d 115, 120–21 (2d Cir. 2003). Here,

the carveouts related to intellectual property and temporary or emergency equitable relief plainly do not apply.

Plaintiffs offer no persuasive justification to depart from Judge Carter's holding that this particular arbitration agreement is "very broad" and evidences the parties' intent to arbitrate arbitrability. *Maldonado*, 2023 WL 4580417, at *4–5. The "context" of "direct purchaser claims" had nothing to do with whether arbitrability was delegated. *See* Opp. at 12. The court in *Maldonado* examined this arbitration provision and whether the AAA rules were incorporated. This Court should apply the same approach and reach the same result.

Plaintiffs' cited cases are inapposite. *See* Opp. at 10–13. In *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, the arbitration provision was "narrow in scope" because it only applied "in the event that the board deadlocks on business decisions." 6 F.4th 308, 319 (2d Cir. 2021). In *Metro. Life Ins. Co. v. Bucsek*, the NASD/FINRA Code "[could not] reasonably be interpreted to provide for arbitration of [plaintiff's] claims" because those "claims [were] based on events that occurred years after he and MetLife had ceased to have any connection with the NASD." 919 F.3d 184, 192 (2d Cir. 2019). And in *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1031–32 (2d Cir. 2014), the carve-out at issue "at least arguably cover[ed] the present dispute"; that is not true here.[2]

At bottom, "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract," reserving the issues of scope and enforceability for arbitration. *Davitashvili*, 131 F.4th at 117–19.

---

[2] *See also Querette v. Chromalloy Gas Turbine LLC*, 2023 WL 145014, at *4 (S.D.N.Y. Jan. 10, 2023) (provision "broadly permit[ted] any grievant" to be represented by counsel in forum other than arbitration); *Delgado v. Donald J. Trump for President, Inc.*, 2022 WL 767166, at *6 (S.D.N.Y. Mar. 14, 2022) (provision was limited to "disputes arising under or relating to" five substantive provisions, "not all disputes").

### B. Even if the Court Reaches the Scope Question, Plaintiffs' Claims Fall Within the Arbitration Agreement

Even if the Court were to reach the scope of the arbitration agreement, it encompasses Plaintiffs' claims. *Davitashvili* considered the scope question under materially different circumstances and is not to the contrary.

#### 1. Plaintiffs Ignore the Arbitration Agreement's Broad Language

Despite its material differences, *Davitashvili* reinforces that the Court must apply the language of the arbitration agreement to the complaint's allegations to determine arbitrability. As the "Supreme Court has explained, … courts must 'rigorously enforce arbitration agreements *according to their terms*.'" *Id.* at 115 (emphasis added) (quoting *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013)). And the "focus [is] on the factual allegations in the complaint rather than the legal causes of action asserted." *Id.* at 119.

Plaintiffs ignore "the[] terms" of their agreements to arbitrate (*id.* at 115)—they do not even attempt to analyze the meaning of "connected with." Nor do they address "the factual allegations in the complaint" (*id.* at 119) about *marketwide* price increases for *all* newly issued, fully licensed NFL, NBA, and MLB cards purchased through *any* channel, including Fanatics.com and MLBShop.com. *See, e.g.*, AC ¶¶ 76–77, 108, 121. Plaintiffs admit that their alleged "relevant market … includes both … direct sales from Fanatics.com as well as … sales through third-party channels." Opp. at 7. Plaintiffs further allege that sales of affected products occur through various channels, including "online stores" and "online retailers" like Fanatics.com and MLBShop.com. AC ¶¶ 88, 108. And, as indirect purchasers, Plaintiffs necessarily allege that Fanatics' allegedly inflated prices were passed on to them—meaning the alleged scheme is inextricably linked to Fanatics' pricing. *Id.* ¶¶ 195–199. Thus, regardless of whether Plaintiffs seek damages only for their indirect purchases, their claims are still "connected with" Fanatics' websites. *See, e.g.*,

*Spinelli v. NFL*, 96 F. Supp. 3d 81, 100 (S.D.N.Y. 2015) (citations omitted) ("Clauses requiring arbitration of disputes 'arising out of or in connection with' underlying contracts are considered 'broad.'"). And if there were any ambiguity about the scope of the arbitration clause (which there is not), the "presumption of arbitrability" would apply and weigh in favor of arbitration. *See Loc. Union 97, IBEW v. Niagara Mohawk Power Corp.*, 67 F.4th 107, 113–16 (2d Cir. 2023).[3]

### 2. The Alleged Scheme and Arbitration Clause Are Different From *Davitashvili*

The alleged conspiracy in *Davitashvili* had nothing to do with purchases or prices charged on the defendants' platforms; it involved claims of inflated restaurant prices charged "off-platform" because of alleged "no-price competition clauses" in the defendants' agreements with restaurants. 131 F.4th at 113. Here, by contrast, Plaintiffs allege a "scheme" impacting "on-platform" prices—that is, they allege "reduced competition" and "inflated prices" for *all* "Pro Sports Trading Cards," including those sold on Fanatics.com and MLBShop.com. AC ¶ 2.[4]

*Davitashvili* also addressed different arbitration language than the clause here. In contending that the "off-platform" claims were subject to its arbitration clause, Grubhub argued the claims were "related to Plaintiffs' 'access and use of Grubhub.'" *Davitashvili*, 131 F.4th at 119. The Second Circuit disagreed because the claims did not involve pricing or other issues on the Grubhub platform, but only prices charged "off-platform." *Id.* Here, the arbitration agreement extends beyond claims arising from the "access and use" of Fanatics' websites to

---

[3] Likewise, Delaware law—specified in the TOU to which Plaintiffs concede they assented—also "favors arbitration," such that "[d]oubts concerning arbitrability should be resolved in favor of arbitrability." *Wilcox & Fetzer, Ltd. v. Corbett & Wilcox*, 2006 WL 2473665, at *3 (Del. Ch. Aug. 22, 2006).

[4] Plaintiffs cite a version of the complaint in *Davitashvili* filed months after the Second Circuit's decision. Opp. at 6 n.4. Allegations in that complaint are irrelevant to the Second Circuit's analysis.

include claims "connected with" those websites. That is a material distinction from *Davitashvili*: a case alleging an "anticompetitive scheme" affecting the prices of *all* "Pro Sports Trading Cards" sold through *any* channel is necessarily "connected with" Fanatics.com and MLBShop.com, where consumers often buy such cards.[5]

### C. Enforcing the Arbitration Provision Is Neither Unconscionable Nor Absurd

Plaintiffs argue in passing that the Court should decline to compel arbitration as a matter of unconscionability or contract formation because their claims "lack any nexus" to the TOU. Opp. at 19–20. This is another impermissible attempt to circumvent "an arbitrability question that the parties have delegated to an arbitrator." *Henry Schein*, 586 U.S. at 69. And contrary to Plaintiffs' assertion that their unconscionability argument is specific to delegation, Mot. at n.8, they raise precisely the type of generalized challenge *Davitashvili* rejected: they fail to "show why allowing an arbitrator—as opposed to a court—to decide the question of arbitrability would be unconscionable." 131 F.4th at 118–19. It is uncontested that a valid agreement exists, and because the agreement delegates arbitrability questions to an arbitrator, "a court may not decide the arbitrability issue." *Henry Schein*, 586 U.S. at 69. Plaintiffs cannot avoid that result by repackaging their scope argument as one of unconscionability or contract formation.

As Plaintiffs' own case explains, unconscionability generally requires a showing that an agreement is both procedurally and substantively unconscionable. *See Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121–22 (2d Cir. 2010). Defendants offered substantial, unrebutted

---

[5] The language in *Davitashvili* limiting the FAA's "presumption of arbitrability" to claims "that 'arise out of' the parties' contractual relationship" does not change the result. 131 F.4th at 119, 124. First, Plaintiffs' antitrust claims *do* "arise out of" the Fanatics' TOU: Plaintiffs agreed to the TOU when making purchases on Fanatics.com and MLBShop.com that they now contend were unlawfully priced. Second, even apart from the FAA, courts "have enforced arbitration provisions against claims arising from FAA-excluded contracts if such provisions were enforceable under state law." *Valdes v. Swift Transp. Co.*, 292 F. Supp. 2d 524, 528 (S.D.N.Y. 2003).

evidence showing the process by which Plaintiffs assented to the TOU with reasonable notice, which Plaintiffs do not contest. Mot. at 3–13; ECF Nos. 165-1–165-19. Instead, Plaintiffs rely on cases with "infinite" arbitration clauses like *McFarlane v. Altice USA, Inc.*, in which the arbitration provision was "*significantly* broader" than the "paradigmatic broad arbitration clause," purporting to govern "any and all disputes" between the parties, including against the defendant's "parents, subsidiaries, affiliates, agents, successors, and so on—without meaningful exception and for all eternity." 524 F. Supp. 3d 264, 275 (S.D.N.Y. 2021). Fanatics' arbitration provision, by contrast, has reasonable boundaries: it applies only to claims "arising out of or connected with" Fanatics' websites, and it is limited to defined entities. *See* ECF Nos. 165-1 at 3, 12; 165-14 at 8. Enforcement of the arbitration agreement and its delegation clause is neither absurd nor contrary to reasonable expectations.

### D. Plaintiffs Must Arbitrate Their Claims Against MLBPI/A, MLB, NBPA, and NBA

Because Plaintiffs allege coordinated conduct between Fanatics and the non-signatory defendants that is indivisible from the conduct alleged against Fanatics, their claims must be compelled to arbitration under the doctrine of equitable estoppel. The Opposition does not disturb this conclusion: it cites no authority holding that federal common law displaces the TOU's choice-of-law provision, it conflates two independent grounds for equitable estoppel, and in claiming there is "no inequity to estop," it disregards the very inequity the doctrine exists to prevent.

First, as Defendants' Motion explained, the law governing equitable estoppel is determined by the TOU's choice-of-law provision, which here is Delaware. Mot. at 22. Plaintiffs do not distinguish *Maldonado* or *Ramasamy v. Essar Glob. Ltd.*, 825 F. Supp. 2d 466 (S.D.N.Y. 2011), on this point, and they concede that "'[t]raditional principles of state contract law' govern equitable estoppel claims." Opp. at 14. Yet they ask the Court to apply federal common law instead. *Id.* at

15–16, n.9. This argument contravenes recent Supreme Court precedent holding that federal common law displaces state law only in "limited areas" where "necessary to protect uniquely federal interests." *Rodriguez v. FDIC*, 589 U.S. 132, 136 (2020) (citation omitted). And while Plaintiffs rely on the Second Circuit's decisions in *Ragone* and *Denney v. BDO Seidman, L.L.P.*, 412 F.3d 58 (2d Cir. 2005) to suggest that federal law controls the application of equitable estoppel over contractual choice-of-law clauses, neither of those cases considered this question.[6] In fact, the Second Circuit has held that a choice-of-law clause controlled the application of equitable estoppel over federal law. *Motorola Credit Corp. v. Uzan,* 388 F.3d 39, 50–51 (2d Cir. 2004).[7]

Further, Plaintiffs' contention that equitable estoppel cannot apply unless allegations of coordinated signatory–non-signatory misconduct bear directly on the contract containing the arbitration clause collapses two independent grounds for equitable estoppel. In *Wilcox & Fetzer, Ltd.*, the court explained that equitable estoppel "compels a signatory to arbitrate with a non-signatory in two circumstances: First, "when the signatory … must rely on the terms of the written agreement in asserting its claims against the nonsignatory," and "[s]econd," when the signatory "raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." 2006 WL 2473665, at *5–6 (citation omitted); *see also, e.g.*, *Douzinas v. Am. Bureau of Shipping*, 888 A.2d 1146, 1153 (Del. Ch. 2006). Plaintiffs' allegations match the latter scenario: they assert parallel conspiracies

---

[6] The Court did not reach this question in *Colony Cap. Inc. v. Flaherty* either. 2022 WL 2440993, at *4 n.4 (S.D.N.Y. July 5, 2022) (Swain, J.).

[7] In *Doe v. Trump Corp.*, "neither [party] argued that North Carolina law governed the dispute," thereby waiving choice-of-law argument on appeal. 6 F.4th 400, 412 (2d Cir. 2021). Second Circuit courts frequently look to the contract's choice-of-law clause to determine whether a non-signatory may compel a signatory to arbitrate. *See, e.g.*, *Johnston v. Electrum Partners LLC*, 2018 WL 3094918, at *5 (S.D.N.Y. June 21, 2018) (collecting cases).

between Fanatics and each of the non-signatory defendants.[8]

Indeed, confronting the same TOU and similar exclusive-licensing conspiracy claims against non-signatory defendants, the court in *Maldonado* determined that the "allegations of 'coordinated behavior between signatories and nonsignatories … based on the same facts, [were] inherently inseparable," and supported the application of equitable estoppel. 2023 WL 4580417, at *4 (citation omitted). The Opposition mischaracterizes dicta to suggest *Maldonado* limited equitable estoppel to claims arising from the contract, but the *Maldonado* plaintiffs' affirmative reliance on the contract did not bear on the court's analysis. *See id.* at *2–4.

Moreover, Defendants' Motion describes the inequity that would result if Plaintiffs' claims survive and these Plaintiffs are not estopped from avoiding arbitration: MLBPI/A, MLB, NBPA, and NBA would be forced to litigate the parallel bilateral conspiracy claims against them and Fanatics in federal court while Plaintiffs simultaneously press identical conspiracy claims against Fanatics in arbitration. Mot. at 23–24, n.8. This would prejudice the non-signatory Defendants and "render the arbitration between the signatories meaningless and thwart the state and federal policy in favor of arbitration." *Douzinas*, 888 A.2d at 1153.

Finally, the Court need not resolve any of these issues, because the question of arbitrability with respect to the non-signatory Defendants is delegated to the arbitrator. Plaintiffs assert that *Contec Corp. v. Remote Sol., Co.* held that "the court must first determine" whether non-signatories can enforce an arbitration provision. Opp. at 18. Plaintiffs are wrong. In *Contec*, the Second Circuit held the opposite—where a dispute over a non-signatory's ability to compel arbitration falls within a delegation provision, that dispute "is within the jurisdiction of the arbitrator."

---

[8] Plaintiffs' cases for the proposition that "equitable estoppel may not be based '*exclusively* on allegations of collusion'" did not decide this question under Delaware law and are therefore inapposite. *See* Opp. 17.

398 F.3d 205, 209–11 (2d Cir. 2005). Here, the provision Plaintiffs signed gives the arbitrator broad authority to determine their jurisdiction, including by resolving "any objections … to the arbitrability of any claim or counterclaim." Mot. at 19. Because Plaintiffs are "signator[ies] to a contract containing an arbitration clause and incorporating by reference the AAA Rules" providing for delegation of arbitrability disputes to the arbitrator, they "cannot now disown [their] agreed-to obligation to arbitrate *all* disputes, including the question of arbitrability." *Contec*, 398 F.3d at 211 (holding that arbitrator had to decide whether signatory was "estopped from avoiding arbitration" with non-signatory).

Accordingly, the Court should compel the Plaintiffs to arbitrate with the non-signatory Defendants.

### E. The Court Should Stay the Remaining Plaintiffs' Claims

Plaintiffs do not dispute that the Arbitration Plaintiffs' claims must be stayed pending arbitration. *See* Mot. at 24. They argue the Court should not stay the claims of the six remaining Plaintiffs because any arbitration decision would not have "preclusive effect on non-consenting plaintiffs." Opp. at 19–20. But the discretionary stay Defendants seek turns on factual overlap and judicial efficiency, not preclusion. *See Winter Invs., LLC v. Panzer*, 2015 WL 5052563, at *11 (S.D.N.Y. Aug. 27, 2015). A stay conserves judicial resources, avoids the parties expending resources on duplicative litigation, and avoids this Court "thwart[ing] the federal policy in favor of arbitration" by rendering the arbitrator's decisions meaningless. *See Hikers Indus., Inc. v. William Stuart Indus. (Far E.) Ltd.*, 640 F. Supp. 175, 178–79 (S.D.N.Y. 1986).

## III. CONCLUSION

Defendants respectfully request that the Court grant their Motion.

Dated: June 12, 2026

Respectfully submitted,

**WEIL, GOTSHAL & MANGES LLP**

*/s/ Yehudah L. Buchweitz**
Yehudah L. Buchweitz
Joseph R. Rausch
767 Fifth Avenue
New York, NY 10153
(212) 310-8000
yehudah.buchweitz@weil.com
joseph.rausch@weil.com

Meagan K. Bellshaw
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7140
meagan.bellshaw@weil.com

*Counsel for Major League Baseball Players Association and MLB Players, Inc.*

**KEKER, VAN NEST & PETERS LLP**

*/s/ R. Adam Lauridsen**
R. Adam Lauridsen
Cody S. Harris
Anjali Srinivasan
Taylor L. Reeves
633 Battery Street
San Francisco, CA 94111
(415) 391-5400
alauridsen@keker.com
charris@keker.com
asrinivasan@keker.com
treeves@keker.com

*Counsel for Major League Baseball and Major League Baseball Properties, Inc.*

**LATHAM & WATKINS LLP**

*/s/ Lawrence E. Buterman*
Lawrence E. Buterman
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200
lawrence.buterman@lw.com

Amanda P. Reeves (*pro hac vice*)
David L. Johnson (*pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200
amanda.reeves@lw.com
david.johnson@lw.com

Christopher S. Yates (*pro hac vice*)
Alicia R. Jovais (*pro hac vice*)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600
chris.yates@lw.com
alicia.jovais@lw.com

*Counsel for Defendants Fanatics, Inc.; Fanatics, LLC; Fanatics Collectibles Intermediate Holdco, Inc.; Fanatics SPV, LLC; and Fanatics Holdings, Inc.*

**ARNOLD & PORTER KAYE SCHOLER LLP**

*/s/ C. Scott Lent**
C. Scott Lent
250 W. 55th Street
New York, New York 10019
(212) 836-8220
scott.lent@arnoldporter.com

*Counsel for National Basketball Players Association*

**SULLIVAN & CROMWELL LLP**

*/s/ Richard C. Pepperman II**
Richard C. Pepperman II
Benjamin R. Walker
Sheeva L. Nesva
125 Broad Street
New York, New York 10004
(212) 558-4000
peppermanr@sullcrom.com
walkerb@sullcrom.com
nesvas@sullcrom.com

*Counsel for Defendants National Basketball Association and NBA Properties, Inc.*

* Fanatics uses electronic signatures with consent in accordance with Rule 8.5(b) of the Court's ECF Rules and Instructions.

**CERTIFICATION OF WORD COUNT COMPLIANCE**

I, Lawrence E. Buterman, hereby certify that the Reply Memorandum of Law in Support of Defendants' Motion to Compel Arbitration complies with the word-count limitations set forth in Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York and Section A.2h. of Chief Judge Swain's Individual Practices. According to the word processing software used to prepare this document, the memorandum contains 3,442 words, excluding the parts of the document exempted by Section A.2h.

*/s/ Lawrence E. Buterman*
Lawrence E. Buterman